UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FILED
U.S. DIST COURT
MIDDLE DIST. OF LA

2004 OCT -8 P 4: 47

SIGN
BY DEPUTY CLERK

| | | |
|---|---|---|
| JEFFERY W. DEPRIEST, | * | CIVIL ACTION |
| Plaintiff | * | |
| | * | NO. 03-1058-A-M1 |
| versus | * | |
| | * | |
| RIVER WEST, L.P. D/B/A | * | |
| RIVER WEST MEDICAL CENTER, | * | |
| Defendant | * | |
| | * | |

* * * * * * * * * * * * * * * * * *

## MOTION FOR SUMMARY JUDGMENT

**NOW INTO COURT** comes defendant, River West, L.P., appearing herein through undersigned counsel, and move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment in its favor against plaintiff, Jeffery W. Depriest, on the grounds that there is no genuine issue as to material fact and mover is entitled to summary judgment as a matter of law. This Motion for Summary Judgment is based upon the attached Defendant's Statement of Material Facts Not in Dispute, and the Memorandum in Support of Motion for Summary Judgment and attached affidavits and other exhibits filed herewith, the pleadings, records and other papers on file herein, all matters of which the Court may take judicial notice, and such argument of counsel and evidence as defendant may present at the time of the hearing of this motion.

Respectfully submitted,

CHAFFE, McCALL, PHILLIPS,
TOLER & SARPY, L.L.P.

D. Scott Landry, T.A. (#18996)
Two United Plaza, Suite 202

55556-1

- 1 -

| INITIALS | DOCKET# |
|---|---|
| | |

8550 United Plaza Boulevard
Baton Rouge, Louisiana  70809
Telephone: (225) 922-4300

Attorneys for River West, L.P.

## CERTIFICATE OF SERVICE

I hereby certify that I have on this date served a copy of the foregoing on counsel of record

for all parties to this proceeding, by mailing the same by United States mail, properly addressed,

and first class postage prepaid.

Baton Rouge, Louisiana, this 8th day of October, 2004.

_____
D. SCOTT LANDRY

55556-1

STATE OF LOUISIANA

PARISH OF IBERVILLE

## A F F I D A V I T

**BEFORE ME**, the undersigned Notary Public in and for the Parish of Iberville, State of Louisiana, came and appeared:

### DOUG ARBOUR

("Affiant"), who, being duly sworn, stated that:

1.

Affiant makes this Affidavit of his own personal knowledge and in support of the Motion for Summary Judgment to be filed by River West, L.P. ("River West") in the lawsuit entitled "Jeffery W. Depriest vs. River West, L.P. d/b/a River West Medical Center," now pending in the United States District Court for the Middle District of Louisiana.

2.

Affiant has been employed by River West at River West Medical Center in Plaquemine, Louisiana since 1985.  He has served as the Director of Ancillary Services/Assistant Administrator since 1999.

3.

Affiant's duties as Director of Ancillary Services/Assistant Administrator have included overseeing the operations of the Radiology/Imaging Department at River West.

4.

Jeffery W. Depriest ("Depriest") was hired as the Director of the Radiology/Imaging Department at River West on December 3, 2001.

55618-1

Page 1 of 5



5.

As Director of the Radiology/Imaging Department, Depriest was not only responsible for the department's budget and inventory, but he also supervised the imaging technologists in the department, fixed their work schedules, and monitored and verified their work hours and pay.

6.

By letter dated June 12, 2002, Depriest informed Affiant that he intended to resign his position as Director of the Radiology/Imaging Department. However, he offered to remain employed as an imaging technologist on an as-needed basis. A true and correct copy of the letter is attached hereto and made a part hereof as Exhibit "A".

7.

During their subsequent discussions, Depriest told Affiant that he wanted to return to school, but would be willing to remain at River West to work as a weekend imaging technologist in the Radiology/Imaging Department.

8.

Depriest proposed the terms under which he would remain at River West as a weekend imaging technologist in the Radiology/Imaging Department. After some discussion, Depriest and Affiant agreed that, among other things:

(a)     Depriest would become a non-exempt employee beginning on July 14, 2002 and that he would work on weekends only, but may be available to work some during weekdays if needed.

(b)     Depriest's regular weekend work schedule would run from Friday at 3:00 p.m. until Sunday at 11:00 p.m. However, during that weekend schedule he would be given two eight (8)-hour periods in which he would be clocked out and released from work, but would be subject to being called back to perform CT scans and x-rays as needed. The two eight (8)-hour periods would be from Friday at 11:00 p.m. until Saturday at 7:00 a.m. and from Saturday at 11:00 p.m. until Sunday at 7:00 a.m.

55618-1

(c)     Depriest's regular weekend work schedule would total forty (40) work hours, which would consist of eight (8) work hours on Friday (3:00 p.m. until 11:00 p.m.), sixteen (16) work hours on Saturday (7:00 a.m. until 11:00 p.m.) and sixteen (16) work hours on Sunday (7:00 a.m. until 11:00 p.m.).

(d)     Depriest would be paid $28 per hour for work hours on weekends (Fridays through Sundays), and $22.87 per hour for work hours on weekdays (Mondays through Thursdays).  Any hours worked on Monday through Thursday beyond the forty (40) weekend hours would be paid at the time and one-half overtime rate.

(e)     Depriest would receive call pay and call back pay in accordance with River West's current rates, which were $2 per hour during periods in which he was subject to call back, $45 per patient per call back for CT scans and $15 per patient per call back for x-rays.

9.

The parties then entered into Radiology Weekend Work Agreement, which included the above terms and conditions.  Affiant was among those who signed the agreement on behalf of River West.  A true and correct copy of the agreement is attached hereto and made a part hereof as Exhibit "B".

10.

As a weekend imaging technologist, Depriest's job duties were to perform CT scans and x-rays.

11.

From July 14, 2002 until April 27, 2003, Depriest worked as a weekend imaging technologist in the Radiology/Imaging Department pursuant to the Radiology Weekend Work Agreement.  At no point during this period did Depriest ever indicate to River West (a) that he felt the two eight (8)-hour periods on the weekends (during which he was clocked out and released from work but was subject to being called back to perform CT scans and x-rays) should be considered as

55618-1

Page 3 of 5

hours worked, (b) that he was not being paid properly for said periods or (c) that he should have been paid for the entirety of said periods at the $22.87 per hour rate, the $28 per hour rate or some other rate.

12.

Depriest was not required to remain in the hospital or on River West premises during the two eight (8)-hour periods on the weekends (when he was clocked out and released from work but was subject to being called back to perform CT scans and x-rays). Affiant never told Depriest that he was required to remain in the hospital or on River West premises during said periods.

13.

Affiant had informed Depriest that (as per hospital policy) during the two eight (8)-hour periods on the weekends (when he was clocked out and released from work but subject to being called back to perform CT scans and x-rays) he was (a) unrestricted in the use of this free time, (b) required to leave a telephone number where he could be reached or carry a pager/beeper, and (c) required to be capable of reporting back to the hospital within thirty (30) minutes of being summoned. Depriest was given a hospital pager to carry during those times in which he was subject to being called back.

14.

During the two eight (8)-hour periods on the weekends (when Depriest was clocked out and released from work but subject to being called back to perform CT scans and x-rays), there was a backup person available to respond to call backs for CT scans and x-rays if Depriest was unavailable and there was no requirement that Depriest actually respond to any particular

55618-1

Page 4 of 5

percentage of call backs. River West did not take disciplinary action against Depriest or other hospital employees for failing to respond to call backs.

15.

During the two eight (8)-hour periods on the weekends (when Depriest was clocked out and released from work but subject to being called back to perform CT scans and x-rays), he voluntarily chose to stay at the hospital to sleep and was permitted to do so (as were other hospital employees). Employees were customarily allowed to sleep in empty patient rooms, which included a bed, bathroom, shower, cable television, radio, telephone, lighting, and electrical and water service. These accommodations, which had an actual cost of at least $40 per night, were provided to employees without charge.

16.

While Depriest was the Director of the Radiology/Imaging Department from December 3, 2001 to July 13, 2002, he did not count as hours worked (and did not pay normal hourly wages for) the hours during which his imaging technologists chose to remain on hospital premises to sleep while subject to callbacks for CT scans and x-rays.

Plaquemine, Louisiana, this _29_ day of _September_, 2004.

_____
**DOUG ARBOUR**

**SWORN TO AND SUBSCRIBED** before me this _29th_ day of _September_, 2004.

_____
**D. SCOTT LANDRY**
**NOTARY PUBLIC**
My Commission Expires: _at Death_.                    (SEAL)

June 12, 2002

Doug Arbour, Director of Ancillary Services

Rick Dicapo, Chief Executive Officer

Doug & Rick, it is with deep regret that I inform you of the resignation of my present position as Diagnostic Imaging Director.   I would like to take this opportunity to thank each of you for the confidence that both of you have demonstrated in my abilities.   I have gleaned knowledge from both of you and feel that I have matured as a Manager from this knowledge.

As per policy, my last day will be July 12, 2002.  I would like to remain as a PRN technologist if that is agreeable to all parties concerned.

Sincerely,

Jeffrey W. DePriest

cc:     Jill Oubre, Human Resource Director

*Received in HR 6/12/02*

EXHIBIT

A

## RIVER WEST MEDICAL CENTER
## RADIOLOGY WEEKEND WORK AGREEMENT

This Radiology Weekend Work Agreement is made by and between River West Medical Center (known hereinafter as "RWMC") and Jeff DePriest (known hereinafter as the "Employee").

In consideration of the Employees commitment to RWMC and RWMC's commitment to the Employee, the parties hereto agree as follows:

1. In order to decrease the amount of Agency use in the Radiology Department and continually provide quality patient care services, RWMC and the Employee have come to an agreement regarding payment terms and schedules to provide coverage in the Radiology Department on weekends and other various shifts, to provide a flexible staffing alternative for the Radiology Department staff members and consistent coverage.

2. RWMC agrees to change the status and title of the Employee from exempt (salaried), Director of Imaging to non-exempt (hourly) Radiology Technologist effective July 14, 2002.

3. RWMC agrees to pay the Employee a base rate of $22.87 per hour for hours worked on a daily basis Sunday through Saturday. In addition, for hours worked on Friday, Saturday and Sunday, RWMC agrees to bonus Employee $5.13 per hour (the difference between $28.00 and base rate, $22.87). RWMC also agrees, that any additional hours worked Monday through Thursday beyond 40 hours (Friday 8 hours, Saturday 16 hours and Sunday 16 hours), will be paid at a rate of $22.87 x 1.5 ($34.305 per hour) to reflect overtime rate. Shift differentials **WILL NOT** apply for any hours worked.

4. Employee will receive call pay and call back pay in accordance with the current rates per the policy.

5. Employee agrees and understands that this Agreement may be terminated either by RWMC or by the Employee in the form of a written resignation with proper notice (2 weeks) from the weekend position as Radiology Technologist.

6. Employee agrees that in order to maintain the weekend position of Radiology Technologist, Employee will remain current with Licensure and Certifications required for this position.

7. Employee acknowledges that this Agreement will become effective on the pay period beginning Sunday, July 14, 2002.

8. The Employee will be required to work on holidays that occur on his/her scheduled weekends.

9. RWMC reserves the right to modify, change or discontinue this Agreement at any time and the Employee realizes that this position is a temporary full-time position.



EXHIBIT

B

I __Jeff DePriest__ , have read and understand the terms and conditions for the Radiology Department Weekend Work Agreement.

I agree to a schedule that calls for working weekends and any additional shifts that may be open in which I can accommodate.

I understand that I will be eligible for full time benefits as long as 32 hours are worked per week on average.

I understand that I am eligible for annual performance reviews.

I understand that River West Medical Center reserves the right to modify, change or discontinue this Agreement at any time and that this position is a temporary full-time position.

With signatures below, RWMC and Employee agree to the terms and conditions of this Agreement as stated.



| | | |
|---|---|---|
| Chief Executive Officer | 7/10/02 Date | Employee Signature, Jeff DePriest    7-12-02 Date |
| Director of Ancillary Services | 7/12/02 Date | Jeff De Priest    Employee Name (print) |
| Director of Human Resources | 7-12-02 Date | 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    SSN of Employee |

**STATE OF LOUISIANA**

**PARISH OF IBERVILLE**

## A F F I D A V I T

**BEFORE ME**, the undersigned Notary Public in and for the Parish of Iberville, State of Louisiana, came and appeared:

### KARI PRINCE

("Affiant"), who, being duly sworn, stated that:

1.

Affiant makes this Affidavit of her own personal knowledge and in support of the Motion for Summary Judgment to be filed by River West, L.P. ("River West") in the lawsuit entitled "Jeffery W. Depriest vs. River West, L.P. d/b/a River West Medical Center," now pending in the United States District Court for the Middle District of Louisiana.

2.

Affiant has been employed by River West at River West Medical Center in Plaquemine, Louisiana since 1999.   She is licensed as a nuclear medicine technologist and worked in the Radiology/Imaging Department since 1999.    She has served as the Director of the Radiology/Imaging Department at River West since July 2002.

3.

Affiant's duties as Director of the Radiology/Imaging Department have included supervising the imaging technologists in the department, fixing their work schedules, and monitoring and verifying their work hours and pay.

55625-1

Page 1 of 6

**EXHIBIT**

2

4.

From July 14, 2002 until April 27, 2003, Jeffery W. Depriest ("Depriest") worked as a weekend imaging technologist in the Radiology/Imaging Department pursuant to a Radiology Weekend Work Agreement. A true and correct copy of the agreement is attached hereto and made a part hereof as Exhibit "A".

5.

As a weekend imaging technologist, Depriest's job duties were to perform CT scans and x-rays.

6.

From July 14, 2002 until April 27, 2003, Depriest's regular weekend work schedule ran from Friday at 3:00 p.m. until Sunday at 11:00 p.m. However, during that weekend schedule he was given two eight (8)-hour periods in which he clocked out and was released from work, but was subject to being called back to perform CT scans and x-rays as needed. The two eight (8)-hour periods were from Friday at 11:00 p.m. until Saturday at 7:00 a.m. and from Saturday at 11:00 p.m. until Sunday at 7:00 a.m.

7.

From July 14, 2002 until April 27, 2003, Depriest's regular weekend work schedule totaled forty (40) work hours, which consisted of eight (8) work hours on Friday (3:00 p.m. until 11:00 p.m.), sixteen (16) work hours on Saturday (7:00 a.m. until 11:00 p.m.) and sixteen (16) work hours on Sunday (7:00 a.m. until 11:00 p.m.).

8.

From July 14, 2002 until April 27, 2003, Depriest was paid $28 per hour for work hours on weekends (Fridays through Sundays), and $22.87 per hour for work hours on weekdays (Mondays through Thursdays). Any hours worked on Monday through Thursday beyond the forty (40) weekend hours were paid at the time and one-half overtime rate.

9.

From July 14, 2002 through April 27, 2003, Depriest received call pay and call back pay in accordance with River West's current rates, which were $2 per hour during those periods in which he was subject to call back, $45 per patient per call back for CT scans and $15 per patient per call back for x-rays.

10.

Attached hereto and made a part hereof as Exhibit "B" is a table showing the number, length and time of each of Depriest's call backs for CT scans and x-rays from July 14, 2002 through April 27, 2003. This information was obtained from the contemporaneous handwritten call logs which were prepared by Depriest, submitted to Affiant for each pay period, and kept in the department. Depriest was paid $45 per patient per call back for each of these CT scans and $15 per patient per call back for each of these x-rays.

11.

Based on Affiant's experience as the Director of the Radiology/Imaging Department, an x-ray normally takes from 10 to 20 minutes, a CT head/face/chest scan normally takes from 10 to 20 minutes, and a CT abdomen/pelvis scan normally takes from 30 to 45 minutes.

55625-1

12.

At no point during the period in which Depriest worked as a weekend imaging technologist did he ever indicate to River West (a) that he felt the two eight (8)-hour periods on the weekends (during which he clocked out and was released from work but was subject to being called back to perform CT scans and x-rays) should be considered as hours worked, (b) that he was not being paid properly for said periods or (c) that he should have been paid for the entirety of said periods at the $22.87 per hour rate, the $28 per hour rate or some other rate.

13.

Depriest was not required to remain in the hospital or on River West premises during the two eight (8)-hour periods on the weekends (when he was clocked out and released from work but was subject to being called back to perform CT scans and x-rays). Affiant never told Depriest that he was required to remain in the hospital or on River West premises during said periods.

14.

As per hospital policy, during the two eight (8)-hour periods on the weekends (when Depriest was clocked out and released from work but subject to being called back to perform CT scans and x-rays) he was (a) unrestricted in the use of this free time, (b) required to leave a telephone number where he could be reached or carry a pager/beeper, and (c) required to be capable of reporting back to the hospital within thirty (30) minutes of being summoned. Depriest was given a hospital pager to carry during those times in which he was subject to being called back.

55625-1

15.

During the two eight (8)-hour periods on the weekends (when Depriest was clocked out and released from work but subject to being called back to perform CT scans and x-rays), there was a backup person available to respond to call backs for CT scans and x-rays if Depriest was unavailable and there was no requirement that Depriest actually respond to any particular percentage of call backs.

16.

River West did not take disciplinary action against Depriest or other hospital employees for failing to respond to call backs.

17.

During the two eight (8)-hour periods on the weekends (when Depriest was clocked out and released from work but subject to being called back to perform CT scans and x-rays), he voluntarily chose to stay at the hospital to sleep and was permitted to do so (as were other hospital employees).

18.

During those periods in which Depriest chose to sleep at the hospital, he was allowed to stay in an empty patient room, which included a bed, a bathroom, a shower, cable television, a telephone, a chair and table, lighting, and electrical and water service.  At some point, Depriest chose to begin sleeping in the ultrasound room (which was located in the radiology/imaging department) instead.  This room was also very quiet and contained a bed, a bathroom, a telephone, a desk, lighting, and electrical and water service.  There was a radio, a refrigerator, a microwave oven and storage lockers just outside of the ultrasound room in the radiology/imaging department, along with cable television and food/drink vending machines in nearby locations in the hospital.    These

55625-1

room accommodations, which had an actual cost of at least $40 per night, were provided to Depriest without charge.  River West customarily furnished these accommodations to its employees.

19.

Affiant usually saw Depriest arrive for work on Fridays with an ice chest, a duffel bag and a change of clothes.

Plaquemine, Louisiana, this _29_ day of _September_, 2004

_____
**KARI PRINCE**

**SWORN TO AND SUBSCRIBED** before me this _29th_ day of _September_, 2004.

_____
**D. SCOTT LANDRY**
**NOTARY PUBLIC**
My Commission Expires: _at death_ .          (SEAL)

# RIVER WEST MEDICAL CENTER
## RADIOLOGY WEEKEND WORK AGREEMENT

This Radiology Weekend Work Agreement is made by and between River West Medical Center (known hereinafter as "RWMC") and Jeff DePriest (known hereinafter as the "Employee").

In consideration of the Employees commitment to RWMC and RWMC's commitment to the Employee, the parties hereto agree as follows:

1.  In order to decrease the amount of Agency use in the Radiology Department and continually provide quality patient care services, RWMC and the Employee have come to an agreement regarding payment terms and schedules to provide coverage in the Radiology Department on weekends and other various shifts, to provide a flexible staffing alternative for the Radiology Department staff members and consistent coverage.

2.  RWMC agrees to change the status and title of the Employee from exempt (salaried), Director of Imaging to non-exempt (hourly) Radiology Technologist effective July 14, 2002.

3.  RWMC agrees to pay the Employee a base rate of $22.87 per hour for hours worked on a daily basis Sunday through Saturday. In addition, for hours worked on Friday, Saturday and Sunday, RWMC agrees to bonus Employee $5.13 per hour (the difference between $28.00 and base rate, $22.87). RWMC also agrees, that any additional hours worked Monday through Thursday beyond 40 hours (Friday 8 hours, Saturday 16 hours and Sunday 16 hours), will be paid at a rate of $22.87 x 1.5 ($34.305 per hour) to reflect overtime rate. Shift differentials WILL NOT apply for any hours worked.

4.  Employee will receive call pay and call back pay in accordance with the current rates per the policy.

5.  Employee agrees and understands that this Agreement may be terminated either by RWMC or by the Employee in the form of a written resignation with proper notice (2 weeks) from the weekend position as Radiology Technologist.

6.  Employee agrees that in order to maintain the weekend position of Radiology Technologist, Employee will remain current with Licensure and Certifications required for this position.

7.  Employee acknowledges that this Agreement will become effective on the pay period beginning Sunday, July 14, 2002.

8.  The Employee will be required to work on holidays that occur on his/her scheduled weekends.

9.  RWMC reserves the right to modify, change or discontinue this Agreement at any time and the Employee realizes that this position is a temporary full-time position.



EXHIBIT

A

I _Jeff DePriest_ , have read and understand the terms and conditions for the Radiology Department Weekend Work Agreement.

I agree to a schedule that calls for working weekends and any additional shifts that may be open in which I can accommodate.

I understand that I will be eligible for full time benefits as long as 32 hours are worked per week on average.

I understand that I am eligible for annual performance reviews.

I understand that River West Medical Center reserves the right to modify, change or discontinue this Agreement at any time and that this position is a temporary full-time position.

With signatures below, RWMC and Employee agree to the terms and conditions of this Agreement as stated.



| | / 7/5/02 | | / 7-12-02 |
| Chief Executive Officer | Date | Employee Signature, Jeff DePriest | Date |

| | / 7/12/02 | Jeff De Priest |
| Director of Ancillary Services | Date | Employee Name (print) |

| | / 7-12-02 | 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 |
| Director of Human Resources | Date | SSN of Employee |

## EXHIBIT "B"

### TO

### AFFIDAVIT OF KARI PRINCE

| Sleep/On-Call Period | Call Backs | Call Back Times (24hr clock) |
|---|---|---|
| Sat. 7/13/02 11pm to Sun. 7/14/02 7am | 2 RAD=10min+10min 1 CT Head=15min | 05:00-05:10; 06:00-06:10; 06:20-06:35 |
| Fri. 7/19/02 11pm to Sat. 7/20/02 7am | 3 RAD=10min+8min+15min | 00:05-00:15; 00:20-00:28; 01:00-01:15 |
| Sat. 7/20/02 11pm to Sun. 7/21/02 7am | 1 RAD=10min | 00:25-00:35 |
| Fri. 7/26/02 11pm to Sat. 7/27/02 7am | 2 RAD=45min+10min | 01:45-02:30; 02:40-02:50 |
| Sat. 7/27/02 11pm to Sun. 7/28/02 7am | 3 RAD=15min+40min+15min | 11:35-11:50; 04:40-05:20; 05:55-06:10 |
| Fri. 8/2/02 11pm to Sat. 8/3/02 7am | 2 RAD=14min+15min | 06:06-06:20; 06:30-06:45 |
| Sat. 8/3/02 11pm to Sun. 8/4/02 7am | 3 RAD=13min+15min+15min | 23:01-23:14; 00:20-00:35; 06:30-06:45 |
| Fri. 8/9/02 11pm to Sat. 8/10/02 7am | 6 RAD = 15min+ 10min+ 20min+ 15min+ 20min+ 65min 1 CT Head=30min | 23:30-23:45; 23:45-00:15; 01:15-01:35; 01:50-02:10; 2:20-2:35; 05:30-5:50; 06:20-7:25 |
| Sat. 8/10/02 11pm to Sun. 8/11/02 7am | 1 RAD=15min | 23:00-23:15 |
| Fri. 8/23/02 11pm to Sat. 8/24/02 7am | 6 RAD=15min+ 10min+ 30min+ 12min+ 50min+ 20min | 23:40-23:55; 23:55-00:05; 00:10-00:40; 03:00-03:12; 03:20-04:10; 04:40-05:00 |
| Sat. 8/24/02 11pm to Sun. 8/25/02 7am | 2 RAD=15min+15min | 23:50-00:05; 00:10-00:25 |
| Fri. 8/30/02 11pm to Sat. 8/31/02 7am | 3 RAD=17min+25min+15min | 00:58-01:15; 01:20-01:45; 06:30-06:45 |
| Sat. 8/31/02 11pm to Sun. 9/1/02 7am | 6 RAD=15min+ 110min(3) +5min+ 5min | 00:10-00:25; 03:30-05:20; 06:30-6:35; 6:35-6:45 |
| Fri. 9/6/02 11pm to Sat. 9/7/02 7am | 2 RAD=20min+6min | 11:45-00:05; 06:18-06:24 |
| Sat. 9/7/02 11pm to Sun. 9/8/02 7am | 2 RAD=30min+15min | 03:00-03:30; 06:30-06:45 |
| Fri. 9/13/02 11pm to Sat. 9/14/02 7am | 2 RAD=45min+10min 1 CT Head=35min | 23:50-00:35; 00:45-00:55; 01:00-01:35 |

55625-1

| Sat. 9/14/02 11pm to Sun. 9/15/02 7am | 1 RAD=20min | 00:10-00:30 |
|---|---|---|
| Fri. 9/20/02 11pm to Sat. 9/21/02 7am | 3 RAD=10min+10min+10min<br>1 CT Abdomen/Pelvis=80min | 23:09-23:19; 23:30-23:40; 23:50-01:10; 01:40-01:50 |
| Sat. 9/21/02 11pm to Sun. 9/22/02 7am | NONE | |
| Fri. 9/27/02 11pm to Sat. 9/28/02 7am | NONE | |
| Sat. 9/28/02 11pm to Sun. 9/29/02 7am | 1 RAD=10min | 00:50-01:00 |
| Fri. 10/4/02 11pm to Sat. 10/5/02 7am | 3 RAD=16min+12min+10min<br>1 CT Head & 1 CT Chest=100min (2) | 01:59-02:15; 02:18-02:30; 02:50-04:30; 06:00-06:10 |
| Sat. 10/5/02 11pm to Sun. 10/6/02 7am | NONE | |
| Fri. 10/11/02 11pm to Sat. 10/12/02 7am | NONE | |
| Sat. 10/12/02 11pm to Sun. 10/13/02 7am | 2 RAD=13min+15min | 23:12+23:25; 03:30-03:45 |
| Sun 10/13/02 11pm to Mon. 10/14/02 7am | NONE | |
| Fri. 10/18/02 11pm to Sat. 10/19/02 7am | 3 RAD=85min(2)+10min<br>1 CT Head & 1 CT Face=45min(2) | 03:15-04:40; 04:45-05:30; 5:35-05:45 |
| Sat. 10/19/02 11pm to Sun. 10/20/02 7am | 3 RAD=15min+13min+10min | 23:45-00:00; 01:37-01:50; 02:40-02:50 |
| Fri. 10/25/02 11pm to Sat. 10/26/02 7am | 5 RAD=20min+ 25min+ 10min+ 10min+ 15min | 03:00-03:20; 03:40-04:05; 05:05-05:15; 05:30-05:40; 06:20-06:35 |
| Sat. 10/26/02 11pm to Sun. 10/27/02 7am | 8 RAD=No times given by Depriest | No times given by Depriest |
| Fri. 11/1/02 11pm to Sat. 11/2/02 7am | 3 RAD=15min+10min+10min | 23:15-23:30; 23:35-23:45; 05:50-06:00 |
| Sat. 11/2/02 11pm to Sun. 11/3/02 7am | 4 RAD=7min+ 20min+ 26min+ 15min | 23:58-00:05; 01:10-01:30; 01:19-01:45; 05:00-05:15 |
| Fri. 11/8/02 11pm to Sat. 11/9/02 7am | 2 RAD=20min+23min | 23:15-23:35; 23:40-00:03 |
| Sat. 11/9/02 11pm to Sun. 11/10/02 7am | 1 RAD=13min | 03:50-04:03 |
| Fri. 11/15/02 11pm to Sat. 11/16/02 7am | 1 RAD=25min | 02:20-02:45 |
| Sat. 11/16/02 11pm to Sun. 11/17/02 7am | 4 RAD=20min+ 15min+15min+ 10min | 02:00-02:20; 03:00-03:15; 03:45-04:00; 04:10-04:20 |
| Fri. 11/22/02 11pm to Sat. 11/23/02 7am | 1 RAD=43 min<br>2 CT Head=20min+90min | 23:30-23:50; 00:00-01:30; 02:42-03:25 |

55625-1

| | | |
|---|---|---|
| Sat. 11/23/02 11pm to<br>Sun. 11/24/02 7am | 4 RAD=14min+ 17min+ 40min+<br>50min | 00:13-00:27; 00:30-00:47;<br>00:51-01:31; 01:43-02:33 |
| Fri. 11/29/02 11pm to<br>Sat. 11/30/02 7am | 3 RAD=19min+9min+10min | 01:21-01:40; 03:51-04:00;<br>05:20-05:30 |
| Sat. 11/30/02 11pm to<br>Sun. 12/1/02 7am | 5 RAD=10min+ 10min+ 10min+<br>10min+ 15min<br>1 CT Head=10min | 23:05-23:15; 23:20-23:30;<br>01:40-01:50; 03:15-03:25;<br>03:35-03:45; 04:00-04:15 |
| Fri. 12/6/02 11pm to<br>Sat. 12/7/02 7am | 2 RAD=5min+7min | 01:09-01:14; 01:56-02:03 |
| Sat. 12/7/02 11pm to<br>Sun. 12/8/02 7am | NONE | |
| Fri. 12/13/02 11pm to<br>Sat. 12/14/02 7am | NONE | |
| Sat. 12/14/02 11pm to<br>Sun. 12/15/02 7am | 3 RAD=No times given by Depriest | No times given by Depriest |
| Fri. 12/20/02 11pm to<br>Sat. 12/21/02 7am | 3 RAD=10min+10min+10min<br>1 CT Head=27min | 23:20-23:30; 00:00-00:10;<br>00:35-00:45; 03:48-04:15 |
| Sat. 12/21/02 11pm to<br>Sun. 12/22/02 7am | 2 RAD=25min+10min | 01:15-01:40; 01:45-01:55 |
| Fri. 12/27/02 11pm to<br>Sat. 12/28/02 7am | 4 RAD=47min+ 15min+ 30min+<br>15min | 02:03-02:50; 03:00-03:30;<br>03:35-03:50; 03:55-04:10 |
| Sat. 12/28/02 11pm to<br>Sun. 12/29/02 7am | 4 RAD=10min+ 15min+ 15min+<br>30min | 23:47-23:57; 01:25-01:40;<br>02:30-02:45; 03:00-03:30 |
| Fri. 1/3/03 11pm to<br>Sat. 1/4/03 7am | 3 RAD=10min+20min+18min | 01:20-01:30; 01:45-02:05;<br>02:17-02:35 |
| Sat. 1/4/03 11pm to<br>Sun. 1/5/03 7am | 3 RAD=10min+10min+10min | 02:30-02:40; 03:10-03:20;<br>06:20-06:30 |
| Fri. 1/10/03 11pm to<br>Sat. 1/11/03 7am | 1 RAD=10min | 23:45-23:55 |
| Sat. 1/11/03 11pm to<br>Sun. 1/12/03 7am | NONE | |
| Fri. 1/17/03 11pm to<br>Sat. 1/18/03 7am | NONE | |
| Sat. 1/18/03 11pm to<br>Sun. 1/19/03 7am | 5 RAD=5min+ 22min+ 13min+<br>8min+ 10min | 01:10-01:15; 01:28-01:50;<br>02:55-03:08; 03:30-03:38;<br>05:19-05:29 |
| Fri. 1/24/03 11pm to<br>Sat. 1/25/03 7am | 3 RAD=23min+16min+10min | 03:52-04:15; 04:59-05:15;<br>05:20-05:30 |
| Sat. 1/25/03 11pm to<br>Sun. 1/26/03 7am | 2 RAD=7min+10min | 00:18-00:25; 01:00-01:10 |
| Fri. 1/31/03 11pm to<br>Sat. 2/1/03 7am | 1 RAD=12min | 01:37-01:49 |

55625-1

| Sat. 2/1/03 11pm to Sun. 2/2/03 7am | 4 RAD=10min+ 10min+ 25min+ 43min+ 45min<br>1 CT Head=25min | 23:05-23:15; 23:50-24:00; 00:30-00:55; 03:17-04:00; 04:45-05:30 |
|---|---|---|
| Fri. 2/7/03 11pm to Sat. 2/8/03 7am | 1 RAD=15min | 00:10-00:25 |
| Sat. 2/8/03 11pm to Sun. 2/9/03 7am | 5 RAD=10min+ 10min+ 10min+ 10min+ 10min | 23:10-23:20; 23:30-23:40; 23:45-23:55; 00:40-00:50; 03:35-3:45 |
| Fri. 2/14/03 11pm to Sat. 2/15/03 7am | 1 RAD=13min | 00:50-01:03 |
| Sat. 2/15/03 11pm to Sun. 2/16/03 7am | NONE | |
| Fri. 2/21/03 11pm to Sat. 2/22/03 7am | 4 RAD=10min+ 10min+ 10min+ 10min | 04:10-04:20; 04:25-04:35; 04:40-04:50; 05:00-05:10 |
| Sat. 2/22/03 11pm to Sun. 2/23/03 7am | 1 RAD=15min | 01:25-01:40 |
| Fri. 2/28/03 11pm to Sat. 3/1/03 7am | 3 RAD=10min+20min+10min<br>1 CT Head=15min | 23:10-23:20; 03:00-03:20; 05:55-06:05; 06:50-7:05 |
| Sat. 3/1/03 11pm to Sun. 3/2/03 7am | NONE | |
| Fri. 3/7/03 11pm to Sat. 3/8/03 7am | 1 RAD=10min | 04:20-04:30 |
| Sat. 3/8/03 11pm to Sun. 3/9/03 7am | 5 RAD=10min+ 15min+ 10min+ 16min+ 10min | 23:00-23:10; 23:15-23:30; 00:55-01:05; 02:30-02:46; 02:50-03:00 |
| Fri. 3/14/03 11pm to Sat. 3/15/03 7am | NONE | |
| Sat. 3/15/03 11pm to Sun. 3/16/03 7am | 1 RAD=45min | 03:20-04:05 |
| Fri. 3/21/03 11pm to Sat. 3/22/03 7am | 3 RAD=15min+15min+8min | 23:05-23:20; 23:30-23:45; 23:57-00:05 |
| Sat. 3/22/03 11pm to Sun. 3/23/03 7am | 6 RAD=18min+ 10min+ 18min+ 10min+ 10min+ 15min<br>1 CT Head=15min | 23:10-23:28; 23:32-23:42; 00:50-01:08; 01:20-01:30; 01:45-01:55; 04:50-05:05; 06:50-07:05 |
| Fri. 3/28/03 11pm to Sat. 3/29/03 7am | 3 RAD=20min+no times given by Depriest for other two | 23:20-23:40; no times given by Depriest for other two |
| Sat. 3/29/03 11pm to Sun. 3/30/03 7am | 3 RAD=15min+ 10min<br>No time given by Depriest for one | 23:15-23:30; no time given by Depriest for one; 04:30-04:40 |
| Fri. 4/4/03 11pm to Sat. 4/5/03 7am | 2 RAD=10min+10min<br>1 CT Head=20min | 2:10-2:20; 2:50-03:00; 06:30-06:50 |

55625-1

| | | |
|---|---|---|
| Sat. 4/5/03 11pm to Sun. 4/6/03 7am | 1 RAD=No time given by Depriest | No time given by Depriest |
| Fri. 4/11/03 11pm to Sat. 4/12/03 7am | NONE | |
| Sat. 4/12/03 11pm to Sun. 4/13/03 7am | NONE | |
| Fri. 4/18/03 11pm to Sat. 4/19/03 7am | 1 RAD=30min | 03:00-03:30 |
| Sat. 4/19/03 11pm to Sun. 4/20/03 7am | 4 RAD=17min+ 15min+ 30min+ 30min | 23:13-23:30; 23:30-23:45; 03:00-03:30; 05:00-05:30 |
| Fri. 4/25/03 11pm to Sat. 4/26/03 7am | 3 RAD=20min+20min+30min | 23:30-23:50; 00:40-01:00; 02:00-02:30 |
| Sat. 4/26/03 11pm to Sun. 4/27/03 7am | 2 RAD=10min+20min | 00:50-01:00; 01:50-02:10 |
| TOTALS | | |

RAD = X-ray
CT = CT Scan

# ORIGINAL TRANSCRIPT

Page 1

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


JEFFREY W. DEPRIEST,

    Plaintiff      CIVIL ACTION
              NO.: 03-1058-A-MI

VERSUS


RIVER WEST, L.P., D/B/A
RIVER WEST MEDICAL CENTER

    Defendant


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


   TRANSCRIPT OF THE DEPOSITION OF
      JEFFREY W. DEPRIEST

TAKEN ON BEHALF OF THE DEFENDANT, RIVER WEST,

L.P., REPORTED IN THE ABOVE ENTITLED AND NUMBERED

CAUSE BY SELINA P. JACOB, CERTIFIED COURT

REPORTER FOR THE STATE OF LOUISIANA.


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


     REPORTED AT THE OFFICES OF:

     JILL L. CRAFT, ESQ.

     8702 JEFFERSON HIGHWAY

       SUITE B

   BATON ROUGE, LOUISIANA  70809

  COMMENCING AT 9:05 A.M., ON AUGUST 26, 2004



**TORRES REPORTING & ASSOCIATES, INC.**

COURT REPORTING & LITIGATION SERVICES
TORRESREPORTING@AOL.COM

1325 Springlake Drive
Baton Rouge, Louisiana 70810
(225) 757-0443
(225) 761-8962 Fax



EXHIBIT
3

JEFFREY W DEPRIEST                          August 26, 2004

Page 90

1    December of '01 was $58,000.  You testified you

2    didn't really recall specifically, but I'll

3    submit to you that's what it was.

4         A.  Okay.

5         Q.  And that salary, when you break it down

6    to a 40-hour week per hour, came to 27.88 per

7    hour, which is basically $28 an hour, just a

8    little bit less than what you were eventually

9    getting paid.  Do you recall that being the

10   reason for the $28 as your weekend rate, because

11   it correlated, basically, to what you were

12   getting before in salary if you broke that salary

13   down to an hourly rate?  Was there some

14   discussion about that?

15        A.  It could have been.

16        Q.  Did you and Doug or did you and anybody

17   else at River West talk about the weekend rate

18   being $30 an hour, or is that what you settled

19   on, 28 being you were both happy with?

20        A.  I can't recall.

21        Q.  Now, look at the same paragraph, the

22   next sentence, which I guess is the third

23   sentence there.  River West also agrees that any

24   additional hours worked Monday through Thursday

25   beyond 40 hours.  And it says Friday eight hours,



TORRES REPORTING & ASSOCIATES, INC.

COURT REPORTING & LITIGATION SERVICES
TORRESREPORTING@AOL.COM

1325 Springlake Drive
Baton Rouge, Louisiana 70810
(225) 757-0443
(225) 761-8962 Fax

848 East Lexington Avenue
Gretna, Louisiana  70056
(504) 392-4791
(504) 392-4852 Fax

JEFFREY W DEPRIEST                            August 26, 2004

Page 91

1    Saturday 16 and Sunday 16.  The reference there
2    to the Friday, Saturday and Sunday, those were
3    the hours that when you were describing earlier
4    your conversation with Doug, you were expected to
5    work eight hours on Friday, 16 on Saturday and
6    Sunday at 16?
7         A.  Yes.
8         Q.  And that this sentence talks about
9    additional hours worked Monday through Thursday
10   beyond 40 would be paid at the rate of 22.87
11   times 1.5 or 34.305 per hour to reflect the
12   overtime rate.  Was it your understanding that
13   the 40 hours referenced in that sentence was
14   Friday eight hours, Saturday 16 and Sunday 16,
15   that's how they came up with the 40?  Is that
16   your understanding?
17        A.  Yes.
18        Q.  And that -- necessarily, if you worked
19   any additional hours on Monday through Thursday,
20   you would be working above 40, correct?
21        A.  Correct.
22        Q.  And although the original agreement, the
23   plan, as you understood it, was for you to work
24   only on weekends.  You made yourself available,
25   or you made it known if there was work during the



TORRES REPORTING & ASSOCIATES, INC.

COURT REPORTING & LITIGATION SERVICES
TORRESREPORTING@AOL.COM

1325 Springlake Drive
Baton Rouge, Louisiana 70810
(225) 757-0443
(225) 761-8962 Fax

848 East Lexington Avenue
Gretna, Louisiana  70056
(504) 392-4791
(504) 392-4852 Fax

Page 105

1    A.  Correct.

2    Q.  Let's talk about those periods of time

3 Friday night 11 p.m. to Saturday 7 a.m. and then

4 again Saturday at 11 p.m. to Sunday at 7 a.m.

5 Each of those are eight-hour periods?

6    A.  Correct.

7    Q.  And tell me, during those two periods

8 every weekend, what is it that you were required

9 to do.

10    A.  I was required to be there at the

11 facility and to perform any radiology exams that

12 I was capable of performing.

13    Q.  CAT scans or --

14    A.  X-rays.

15    Q.  -- X-rays, correct?

16    A.  Correct.

17    Q.  These would be, I presume, emergencies,

18 CAT scans and emergency X-rays?

19    A.  Probably the bulk of it, yes.

20    Q.  Because doctors wouldn't typically

21 schedule those procedures to be done during the

22 weekends, right?

23    A.  Well, there may be something on the

24 floor that would need to be performed at that

25 time, also.



TORRES REPORTING & ASSOCIATES, INC.

COURT REPORTING & LITIGATION SERVICES
TORRESREPORTING@AOL.COM

1325 Springlake Drive
Baton Rouge, Louisiana 70810
(225) 757-0443
(225) 761-8962 Fax

848 East Lexington Avenue
Gretna, Louisiana  70056
(504) 392-4791
(504) 392-4852 Fax

JEFFREY W DEPRIEST                                        August 26, 2004

Page 106

1        Q.   Not as an emergency?

2        A.   It may not be an actual emergency, but a

3    physician may feel it is necessary or urgent to

4    do.

5        Q.   Either an urgent procedure or an

6    emergency procedure, something of that nature,

7    out of the ordinary?

8        A.   Correct.

9        Q.   And these were not scheduled procedures,

10   they were just -- you would just suddenly find

11   out that you had to go do the procedure?

12       A.   Correct.

13       Q.   It wasn't a planned procedure.  For

14   example, when you showed up on Friday to report

15   for work for the weekend, you were not told,

16   "Look, we've got some procedures that we are

17   going to do Friday, Saturday and Sunday," you

18   didn't know when you reported for work, correct,

19   what those procedures were going to be for the

20   weekend?

21       A.   Right.

22       Q.   And it could be none, or it could be a

23   whole bunch, correct?

24       A.   Correct.

25       Q.   During those two eight-hour periods that



TORRES REPORTING & ASSOCIATES, INC.

COURT REPORTING & LITIGATION SERVICES
TORRESREPORTING@AOL.COM

1325 Springlake Drive
Baton Rouge, Louisiana 70810
(225) 757-0443
(225) 761-8962 Fax

848 East Lexington Avenue
Gretna, Louisiana  70056
(504) 392-4791
(504) 392-4852 Fax

JEFFREY W DEPRIEST                    August 26, 2004

Page 107

1    we talked about, Friday nights and Saturday

2    nights, you were completely relieved from duty,

3    you could do whatever you wanted during those

4    periods, couldn't you?

5         A.  I couldn't leave the facility.

6         Q.  Who was it that told you you couldn't

7    leave the facility?

8         A.  Doug.

9         Q.  During that conversation before you

10   signed the agreement?

11        A.  Yes.

12        Q.  Did anyone else ever tell you that you

13   couldn't leave the facility?

14        A.  Not that I remember.

15        Q.  Otherwise, you could do whatever you

16   wanted during those two eight-hour periods,

17   right, other than, as you say, you had been told

18   by Doug not to leave the facility, otherwise, you

19   could do whatever you wanted?

20        A.  Preferably sleep.

21        Q.  But otherwise, you were permitted by

22   River West to do whatever you wanted?

23        A.  I guess within the bounds of

24   reasonableness, yes.

25        Q.  I think I may understand what you are



TORRES REPORTING & ASSOCIATES, INC.

COURT REPORTING & LITIGATION SERVICES
TORRESREPORTING@AOL.COM

1325 Springlake Drive
Baton Rouge, Louisiana 70810
(225) 757-0443
(225) 761-8962 Fax

848 East Lexington Avenue
Gretna, Louisiana  70056
(504) 392-4791
(504) 392-4852 Fax

JEFFREY W DEPRIEST                                    August 26, 2004

Page 108

1   talking about, but tell me, what do you mean,

2   within the bound of reasonableness?

3        A.   I guess I couldn't, you know, bring in a

4   bunch of alcohol or something like that and have

5   a big party.

6        Q.   Right.  And you weren't permitted to go

7   into town or to do anything else you wanted away

8   from the hospital?

9        A.   No.  My understanding is that I had to

10   remain there for any emergency room patients that

11   came in.

12        Q.   Remain physically in the hospital?

13        A.   Correct.

14        Q.   And that you couldn't even go outside of

15   the hospital and go into town, into Plaquemine?

16        A.   Correct.

17        Q.   But otherwise, within reason, you could

18   do whatever you wanted during those eight-hour

19   periods, those two eight-hour periods on the

20   weekend?

21        A.   Correct.

22        Q.   Was there some hospital policy or

23   procedure that said you had to stay in the

24   hospital during those two eight-hour periods?

25        A.   Not that I can recall.



TORRES REPORTING & ASSOCIATES, INC.

COURT REPORTING & LITIGATION SERVICES
TORRESREPORTING@AOL.COM

1325 Springlake Drive
Baton Rouge, Louisiana 70810
(225) 757-0443
(225) 761-8962 Fax

848 East Lexington Avenue
Gretna, Louisiana 70056
(504) 392-4791
(504) 392-4852 Fax

JEFFREY W DEPRIEST                                August 26, 2004

Page 119

```
 1        A.   No.   I guess because of the walls or
 2   something.
 3        Q.   Again, no one told you that you had to
 4   sleep during those two eight-hour periods,
 5   correct, that is what you chose to do?
 6        A.   That's what was done in the past.
 7        Q.   That is what other people did, but
 8   again, no one told you that you had to use that
 9   time sleeping, right?
10        A.   No one told me I had to use that time
11   sleeping.
12        Q.   You chose to do that because you wanted
13   to sleep?
14        A.   Correct.
15        Q.   And typically, during those two
16   eight-hour periods, that is what you would do?
17        A.   Yes.
18        Q.   Were there ever times during those two
19   eight-hour periods on the weekends where you
20   didn't sleep, that you went to go do something
21   else?
22        A.   No.   You mean other than performing
23   X-rays?
24        Q.   Calls.
25        A.   Yeah.
```



TORRES REPORTING & ASSOCIATES, INC.

COURT REPORTING & LITIGATION SERVICES
TORRESREPORTING@AOL.COM

1325 Springlake Drive
Baton Rouge, Louisiana 70810
(225) 757-0443
(225) 761-8962 Fax

848 East Lexington Avenue
Gretna, Louisiana 70056
(504) 392-4791
(504) 392-4852 Fax

JEFFREY W DEPRIEST                          August 26, 2004

Page 120

1    Q.   You didn't choose to go sit and watch TV

2  or something like that.  You could have, you just

3  didn't, you would rather sleep?

4    A.   I would much rather sleep.

5    Q.   Now, if you got a call, you had -- you

6  didn't have to report right away, you were given

7  a time to report back to actually perform the

8  procedure, correct?

9    A.   I don't think there was a defined time.

10   Q.   They didn't tell you you have to report

11 back within 30 minutes?

12   A.   No.  They just -- I was never told it

13 was a defined time, but I would --

14   Q.   Go ahead, I'm sorry.

15   A.   Just being in the medical field, the

16 physicians want it as quick as possible and

17 assuming -- they're assuming that you are there

18 in the facility, and they want you to get over

19 there and do it quickly.

20   Q.   Did anyone ever tell you you had to

21 respond within a certain period of time?

22   A.   No.

23   Q.   Was there a hospital policy or procedure

24 that said you have to report when you are called,

25 you have to respond within a certain period of



TORRES REPORTING & ASSOCIATES, INC.

COURT REPORTING & LITIGATION SERVICES
TORRESREPORTING@AOL.COM

1325 Springlake Drive
Baton Rouge, Louisiana 70810
(225) 757-0443
(225) 761-8962 Fax

848 East Lexington Avenue
Gretna, Louisiana  70056
(504) 392-4791
(504) 392-4852 Fax

JEFFREY W DEPRIEST                                    August 26, 2004

                                                        Page 128
1    before you took that position?
2         A.   Yes.
3         Q.   Now, when you came to work on Fridays to
4    work the weekends, did you bring anything with
5    you?
6         A.   Yes.
7         Q.   What did you bring?
8         A.   Change of clothes.
9         Q.   What else?
10        A.   Lunch.
11        Q.   A meal, one meal, one lunch?
12        A.   I bring several.  I had an ice chest
13   with some drinks.
14        Q.   Anything else?
15        A.   Not that I can recall.
16        Q.   I take it in this ultrasound room there
17   was electricity?  You had power and lights?
18        A.   Right.
19        Q.   Let me show you one of the documents
20   that we produced to you, I guess either in the
21   original production or in the most recent or I
22   guess both.  This one is the document, multi-page
23   document entitled "Punch Detail."  I think we
24   produced this as the first set of responses.  And
25   it looks like it runs from a period of time --



TORRES REPORTING & ASSOCIATES, INC.

COURT REPORTING & LITIGATION SERVICES
TORRESREPORTING@AOL.COM

1325 Springlake Drive
Baton Rouge, Louisiana 70810
(225) 757-0443
(225) 761-8962 Fax

848 East Lexington Avenue
Gretna, Louisiana 70056
(504) 392-4791
(504) 392-4852 Fax

JEFFREY W DEPRIEST                                    August 26, 2004

Page 150

1   BY MR. LANDRY:

2       Q.  All of those paychecks were cashed,

3   right?  I mean, you cashed everything?

4       A.  Yeah, every one I got.

5       Q.  Now, when you were the department

6   director, your -- the weekend technologist that

7   worked for you were paid essentially the same way

8   you were paid as weekend, except for the fact

9   that you were paid a higher rate than you were?

10      A.  Uh-huh.

11      Q.  Do you recall what their rate was?

12      A.  No, I don't.

13      Q.  They would have worked the same

14  schedule, the same hours on the weekend, Friday

15  at 3 o'clock to Sunday at 11, on alternating

16  weekends?

17      A.  No.  I think they actually came in -- I

18  don't think they worked the three to eleven,

19  because that shift, when I was first there, that

20  shift was covered.

21      Q.  So they came in on Friday night at 11

22  p.m. and left Sunday night at 11 p.m.?

23      A.  Uh-huh.

24      Q.  But otherwise, their time that they

25  worked and were on call and all that was all the



TORRES REPORTING & ASSOCIATES, INC.

COURT REPORTING & LITIGATION SERVICES
TORRESREPORTING@AOL.COM

1325 Springlake Drive
Baton Rouge, Louisiana 70810
(225) 757-0443
(225) 761-8962 Fax

848 East Lexington Avenue
Gretna, Louisiana  70056
(504) 392-4791
(504) 392-4852 Fax

JEFFREY W DEPRIEST                      August 26, 2004

Page 151

1      same as what you did?

2           A.   The best of my knowledge, right.

3           Q.   Let me show you -- Let me ask you first:

4      Again, we're simply talking about this time when

5      you worked under this contract.

6                MS. CRAFT:

7                     I'm going to object to calling it

8      the contract.  It is just a document.

9      BY MR. LANDRY:

10          Q.   The agreement, it is titled the

11     "Agreement," contract, I assumed it was the same

12     thing, but how would you sort of describe your

13     work performance?  Did you do a good job, not so

14     good?  Earlier you referred to your performance

15     as four out of five on a scale of five?

16          A.   Uh-huh.

17          Q.   How would you classify it during this

18     period of time?

19          A.   Four.

20          Q.   About the same?  Did any hospital

21     officials, employees, discuss with you concerns

22     that they had with regards to your performance?

23          A.   No.

24          Q.   Dr. Scherer never did?

25          A.   No.


TORRES REPORTING & ASSOCIATES, INC.

COURT REPORTING & LITIGATION SERVICES
TORRESREPORTING@AOL.COM

1325 Springlake Drive
Baton Rouge, Louisiana 70810
(225) 757-0443
(225) 761-8962 Fax

848 East Lexington Avenue
Gretna, Louisiana 70056
(504) 392-4791
(504) 392-4852 Fax

JEFFREY W DEPRIEST                                August 26, 2004

Page 168

1        Q.   '03?

2        A.   Yes.

3        Q.   So if phone messages had been left for

4    you at the Walker phone number after July 27,

5    '03, you wouldn't necessarily have received that?

6        A.   That is a good possibility I didn't

7    receive any of it.

8        Q.   Your ex-wife was living there?

9        A.   Yes.

10        Q.   She may have gotten it, you don't know?

11        A.   Correct.

12        Q.   While you were still working at River

13    West, did you ever -- Are you okay?

14        A.   Yeah, I'm fine.

15        Q.   -- did you ever tell Doug or Kari or HR

16    or anybody at the hospital that you didn't think

17    that you weren't being paid the appropriate wages

18    or you didn't think they were calculating your

19    work hours properly?

20        A.   Not that I can recall.

21        Q.   Did you ever -- Same question.  Did you

22    ever complain or talk to anybody at the hospital

23    while you were working there about how you didn't

24    think the -- your on call time, those two

25    eight-hour periods on the weekends at that time



TORRES REPORTING & ASSOCIATES, INC.

COURT REPORTING & LITIGATION SERVICES
TORRESREPORTING@AOL.COM

1325 Springlake Drive
Baton Rouge, Louisiana 70810
(225) 757-0443
(225) 761-8962 Fax

848 East Lexington Avenue
Gretna, Louisiana 70056
(504) 392-4791
(504) 392-4852 Fax

JEFFREY W DEPRIEST                        August 26, 2004

Page 169

1    was accounted for in the right way, as far as

2    your pay?

3         A.   Repeat the question.

4         Q.   The two eight-hour periods that you had

5    on the weekends.

6         A.   Right.

7         Q.   Did you ever while you were still

8    working at River West ever go to anybody at the

9    hospital and say that you didn't think that they

10   were paying you properly with regard to those

11   periods of time?

12        A.   No.

13        Q.   The lawsuit that you filed in this case,

14   the original petition, are you familiar with what

15   I am talking about?

16             MS. CRAFT:

17                  The lawsuit.

18             THE WITNESS:

19                  Yeah.

20   BY MR. LANDRY:

21        Q.   You have seen it?

22        A.   I think so, yeah.

23        Q.   Did you assist in preparing that

24   document in any way?

25             THE WITNESS:



TORRES REPORTING & ASSOCIATES, INC.

COURT REPORTING & LITIGATION SERVICES
TORRESREPORTING@AOL.COM

1325 Springlake Drive
Baton Rouge, Louisiana 70810
(225) 757-0443
(225) 761-8962 Fax

848 East Lexington Avenue
Gretna, Louisiana  70056
(504) 392-4791
(504) 392-4852 Fax

STATE OF LOUISIANA

PARISH OF IBERVILLE

<u>A F F I D A V I T</u>

**BEFORE ME**, the undersigned Notary Public in and for the Parish of Iberville, State of Louisiana, came and appeared:

**DR. CARL SCHERER**

("Affiant"), who, being duly sworn, stated that:

1.

Affiant makes this Affidavit of his own personal knowledge and in support of the Motion for Summary Judgment to be filed by River West, L.P. ("River West") in the lawsuit entitled "Jeffery W. Depriest vs. River West, L.P. d/b/a River West Medical Center," now pending in the United States District Court for the Middle District of Louisiana.

2.

Affiant is a licensed to practice medicine in the State of Louisiana and is board certified in diagnostic radiology by the American Board of Radiology. He has been the Medical Director of the Radiology/Imaging Department and staff radiologist at River West Medical Center in Plaquemine, Louisiana since 1996.

3.

Affiant's duties as Medical Director of the Radiology/Imaging Department and staff radiologist have included reading CT scans and x-rays, supervising the imaging technologists from a medical standpoint, consulting with the medical staff, developing protocols for exams and



EXHIBIT

4

equipment acquisition.    In this position Affiant has worked closely with the Director of the Radiology/Imaging Department and the imaging technologists at River West.

4.

Based on Affiant's experience as the Medical Director of the Radiology/Imaging Department and staff radiologist at River West, an x-ray normally takes from 10 to 20 minutes, a CT head/face/chest scan normally takes from 10 to 20 minutes, and a CT abdomen/pelvis scan normally takes from 30 to 45 minutes.

Plaquemine, Louisiana, this __29__ day of __SEPTEMBER__ 2004.

DR. CARL SCHERER

SWORN TO AND SUBSCRIBED before me this _____ day of _____, 2004.

D. SCOTT LANDRY
NOTARY PUBLIC
My Commission Expires: _____.                    (SEAL)

55626-1

STATE OF LOUISIANA

PARISH OF IBERVILLE

## A F F I D A V I T

**BEFORE ME**, the undersigned Notary Public in and for the Parish of Iberville, State of Louisiana, came and appeared:

### DR. CARL SCHERER

("Affiant"), who, being duly sworn, stated that:

1.

Affiant makes this Affidavit of his own personal knowledge and in support of the Motion for Summary Judgment to be filed by River West, L.P. ("River West") in the lawsuit entitled "Jeffery W. Depriest vs. River West, L.P. d/b/a River West Medical Center," now pending in the United States District Court for the Middle District of Louisiana.

2.

Affiant is a licensed to practice medicine in the State of Louisiana and is board certified in diagnostic radiology by the American Board of Radiology. He has been the Medical Director of the Radiology/Imaging Department and staff radiologist at River West Medical Center in Plaquemine, Louisiana since 1996.

3.

Affiant's duties as Medical Director of the Radiology/Imaging Department and staff radiologist have included reading CT scans and x-rays, supervising the imaging technologists from a medical standpoint, consulting with the medical staff, developing protocols for exams and

55626-1

Page 1 of 2



equipment acquisition.   In this position Affiant has worked closely with the Director of the Radiology/Imaging Department and the imaging technologists at River West.

4.

Based on Affiant's experience as the Medical Director of the Radiology/Imaging Department and staff radiologist at River West, an x-ray normally takes from 10 to 20 minutes, a CT head/face/chest scan normally takes from 10 to 20 minutes, and a CT abdomen/pelvis scan normally takes from 30 to 45 minutes.

Plaquemine, Louisiana, this __29__ day of __SEPTEMBER__ 2004.

**DR. CARL SCHERER**

**SWORN TO AND SUBSCRIBED** before me this _____ day of _____, 2004.

**D. SCOTT LANDRY**
**NOTARY PUBLIC**
My Commission Expires: _____ .                    (SEAL)